# In the United States Court of Federal Claims

No. 18-686C
Filed: April 24, 2019

| | |
|---|---|
| SIN HANG LEE, M.D.,<br><br>              Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>              Defendant. | Breach Of Contract; RCFC 12(b)(6);<br>Failure To State A Claim; RCFC 12(b)(1);<br>Subject-Matter Jurisdiction; Tort Claims;<br>Implied-in-Fact Contract; Contract<br>Formation. |

*Mary Alice Moore Leonhardt*, Counsel of Record, *Daniel J. Csuka*, Of Counsel, Moore Leonhardt & Associates LLC, Hartford, CT, for plaintiff.

*Borislav Kushnir*, Trial Attorney, *L. Misha Preheim*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Heather Huntley*, Of Counsel, Office of General Counsel, United States Centers for Disease Control and Prevention, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

In this breach of contract action, plaintiff, Dr. Sin Hang Lee, alleges that he entered into an implied-in-fact contract with the United States Centers for Disease Control and Prevention ("CDC") related to a sequencing-based molecular test to diagnose Lyme disease and that the CDC breached this contract. *See generally* Am. Compl. Plaintiff also alleges that the CDC engaged in anti-competitive conduct and defamed him by making certain false statements about the results of the sequencing-based molecular test. *Id*. at ¶¶ 53-81. As relief, plaintiff seeks to recover monetary damages from the government. *Id*. at Prayer for Relief.

The government has moved to dismiss the amended complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See*

*generally* Def. Mot.  For the reasons set forth below, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the amended complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

In this breach of contract action, plaintiff alleges that he entered into an implied-in-fact contract with the CDC to endorse his sequencing-based molecular test to diagnose Lyme disease and that the CDC breached this contract.  *See generally* Am. Compl.  In addition, plaintiff alleges that the CDC engaged in anti-competitive conduct and defamed him by making certain false statements regarding the results of the sequencing-based molecular test.  *Id*. at ¶¶ 53-81.  As relief, plaintiff seeks to recover $57.1 million in monetary damages from the government.  *Id*. at Prayer for Relief.

As background, plaintiff is a pathologist/inventor and the owner of the Milford Molecular Diagnostics Laboratory located in Milford, CT.  *Id*. at ¶ 2.  Plaintiff alleges in the amended complaint that he has developed a sequencing-based molecular test for the accurate diagnosis of Lyme disease which is "significantly more accurate than any other test currently used."  *Id*. at ¶ 6.  Plaintiff also alleges that he entered into an implied-in-fact contract with the CDC to have this test approved by the CDC as the "gold standard."  *Id*. at ¶¶ 32-35.

In this regard, plaintiff alleges that the CDC offered to enter into a contract with plaintiff during a September 24, 2012, open conference on Lyme disease diagnostics activities, when Martin E. Schriefer, Ph.D., the chief of the CDC's diagnostic and reference laboratory, stated that:

> So wherever possible we encouraged and required other non-serologic-based tests in addition to clinical presentation so that might have included PCR or culture or both. . . . And again I'm looking forward to seeing a greater utilization of PCR as a diagnostic tool in the future.

*Id*. at ¶ 13.

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from the amended complaint ("Am. Compl."); the documents attached thereto ("Pl. Ex."); and the government's motion to dismiss the amended complaint ("Def. Mot.").  Except where otherwise noted, the facts recited herein are undisputed.

Plaintiff further alleges that he accepted the CDC's offer to contract when David M. Shearer, M.D., the chief executive officer of Therapeutic Research Foundation, Inc., "contacted Dr. Schriefer on behalf of [plaintiff] . . . urging the CDC to endorse [plaintiff's] nested PCR/DNA sequencing-based diagnostic technology as a needed molecular test for the accurate diagnosis of Lyme [disease]." *Id*. at ¶ 15.

In 2013, the CDC provided plaintiff with samples of blind-coded archived serum pursuant to two material transfer agreements ("MTAs"). *Id*. at ¶¶ 17-23. These MTAs were executed on behalf of the CDC by Drs. Beth Bell and Claudia Molins. *Id*.; Pl. Exs. 6, 9. Plaintiff and Dr. Shearer also signed these agreements in their respective capacities as the investigators and authorized officials for the recipient. Pl. Exs. 6, 9.

Plaintiff maintains that by entering into the MTAs—and having various other interactions with the CDC—a larger implied-in-fact contract was created between the CDC and plaintiff, whereby the CDC "promised that if the tests performed as expected, [plaintiff's] testing would be approved [by the CDC] as the 'gold standard.'" Am. Compl. at ¶¶ 32-35. In this regard, plaintiff maintains that he and the CDC contractually agreed that, "if the report regarding the second samples [provided to plaintiff] was received and favorable, [plaintiff] would proceed to develop a protocol for use in a national comparative study to measure the accuracy and cost effectiveness of the then currently used tests against [plaintiff's] nested PCR/DNA sequencing-based diagnostic technology." *Id*. at ¶ 16. Plaintiff also maintains that the CDC breached this alleged implied-in-fact contract by failing to transfer his test technology to hospitals, or to permit more trials of this technology. *Id*. at ¶ 52.

Lastly, plaintiff alleges that the CDC has "engaged in an anti-competitive campaign to stifle the use and availability" of his sequencing-based molecular test and that the CDC defamed him by stating that plaintiff and Dr. Shearer "reported inconsistent results for this specimen [in connection with the sequencing-based molecular test]." *Id*. at ¶¶ 6, 53-54; *see also id.* at ¶¶ 40-60; Pl. Ex. 20 at 3.

### B.     Procedural Background

Plaintiff commenced this action on May 15, 2018. *See generally* Compl. On July 16, 2018, the government filed a motion to dismiss. *See generally* Def. Mot. to Dismiss. After the

government filed a motion to dismiss the complaint, plaintiff filed an amended complaint on October 1, 2018. *See generally* Am. Compl.

On November 2, 2018, the government filed a motion to dismiss the amended complaint. *See generally* Def. Mot. On November 30, 2018, plaintiff filed a response and opposition to the government's motion to dismiss the amended complaint. *See generally* Pl. Resp. The government filed a reply in support of its motion to dismiss the amended complaint on December 17, 2018. *See generally* Def. Reply. On January 11, 2019, plaintiff filed a sur-reply. *See generally* Pl. Sur-Reply.

These matters having been fully briefed, the Court resolves the pending motion to dismiss.

## III.   LEGAL STANDARDS

### A.   Jurisdiction And RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction, pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, plaintiff bears the burden of establishing subject-matter jurisdiction and he must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act is, however, a jurisdictional statute and "it does not create any substantive right enforceable against the United States for money damages. . . . [T]he

Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (alterations original). And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

In this regard, it is well-established that this Court does not possess subject-matter jurisdiction to review tort claims. *Hernandez v. United States*, 96 Fed. Cl. 195, 204 (2010); *see also* 28 U.S.C. § 1491(a)(1); *Keene Corp. v. United States*, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims today."); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction [over] claims sounding in tort."). The Court also does not possess subject-matter jurisdiction to consider claims brought pursuant to the Sherman Act, the Clayton Act, or the Federal Trade Commission Act. *See Kabando v. United States*, No. 14-562C, 2014 WL 4251548, at *2 (Fed. Cl. Aug. 28, 2014), *aff'd*, No. 15-5018 (Fed. Cir. Jan. 21, 2015) (stating the court does not have jurisdiction over claims arising under the Sherman Antitrust Act); 28 U.S.C. § 1337(a) (stating that district courts have original jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies" such as the Clayton and FTC acts). And so, the Court must dismiss tort claims and claims arising under federal antitrust laws for lack of subject-matter jurisdiction.

### B.     RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), this Court similarly must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-

movant's favor. *See Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) (citing *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (citation omitted). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant. *Id.* at 678-79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C.    Contracts With The United States

Lastly, this Court possesses subject-matter jurisdiction to consider breach of contract claims against the United States based upon an express or implied-in-fact contract. 28 U.S.C. § 1491(a)(1). Plaintiff bears the burden of proving the existence of a contract with the United States and he must demonstrate that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).

To pursue a breach of contract claim against the United States under the Tucker Act, plaintiff must have privity of contract with the United States. *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (citations omitted) ("[T]he 'government consents to be sued only by those with whom it has privity of contract.'"). Plaintiff must also support his contract claim with well-pleaded allegations going to each element of a contract. *See Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014) (holding that to invoke the jurisdiction of this Court under the Tucker Act, a plaintiff must present a well-pleaded allegation that its claims arose out of a valid contract with the United States); *see also* RCFC 9(k) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies."); *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010). In addition, RCFC 9(k) requires that a party identify the substantive provisions of the contract on which the party relies when pleading a

claim founded on a contract with the United States.  RCFC 9(k).  And so, this rule ensures that the Court knows the relevant provisions of a contract to render a decision on a breach of contract claim.  *Gonzalez-McCaulley Inv. Grp., Inc.*, 93 Fed. Cl. at 715.

The requirements for establishing a contract with the United States are identical for express and implied-in-fact contracts.  *See Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006); *Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 767 (2014) ("The elements are the same for an express or implied-in-fact contract . . . .").  Specifically, a plaintiff must show:  (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon.  *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  In this regard, a government official's authority to bind the United States must be express or implied.  *Roy v. United States*, 38 Fed. Cl. 184, 188-89 (1997), *dismissed*, 124 F.3d 224 (Fed. Cir. 1997).  And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents."  *Id.* at 187.

A government official possesses express actual authority to bind the United States in contract "'only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms.'"  *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009), *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (citation omitted).  On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees."  *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007) (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627 (stating that implied actual authority "is restricted to situations where 'such authority is considered to be an integral part of the duties assigned to a [g]overnment employee.'") (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)).  In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the

government can still be bound by contract if the contract was ratified by an official with the necessary authority.[2] *Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

## IV.     LEGAL ANALYSIS

The government has moved to dismiss the amended complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted for the following eight reasons:  (1) the allegations in the amended complaint concerning offer and acceptance are insufficient to demonstrate the formation of a contract with the government; (2) plaintiff's draft protocol demonstrates that the parties never intended to enter into a contract to test plaintiff's methods; (3) the relationship between plaintiff and the CDC was not contractual; (4) the amended complaint fails to identify substantive provisions of the alleged contract; (5) the amended complaint lacks specific allegations concerning the authority of government officials to enter into the alleged contract and the CDC's breach; (6) the amended complaint fails to allege specific facts to show that plaintiff's remedy would be monetary damages; (7) the amended complaint fails to allege or demonstrate that plaintiff is a party to the alleged contract; and (8) the Court does not possess subject-matter jurisdiction to consider plaintiff's tort and antitrust claims. *See generally* Def. Mot.  And so, the government requests that the Court dismiss the amended complaint, pursuant to RCFC 12(b)(1) and (6).  *Id.* at 1.

Plaintiff counters in his response and opposition to the government's motion to dismiss that he has established the existence of an implied-in-fact contract with the CDC, because the amended complaint sufficiently alleges offer, acceptance, and authority on the part of government officials to contractually bind the CDC.  Pl. Resp. at 17-25.  Plaintiff also argues that the amended complaint sufficiently alleges:  (1) the substantive provisions of his contract with the CDC; (2) that he is entitled to recover monetary damages from the government; and (3) that he is a party to a contract with the government.  *Id.* at 26-31.  And so, plaintiff requests that the

---

[2] Ratification may take place at the individual or institutional level.  *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 653-54 (2007).  Individual ratification occurs when a supervisor:  (1) possesses the actual authority to contract; (2) fully knew the material facts surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate.  *Id.* at 654 (quoting *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005)).  In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract."  *Id.* at 654; *see also Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

Court deny the government's motion to dismiss, or, alternatively grant him leave to further amend the complaint.  *Id*. at 32.

For the reasons discussed below, the Court does not possess subject-matter jurisdiction to consider plaintiff's tort and antitrust claims against the government.  A careful reading of the amended complaint also makes clear that plaintiff fails to sufficiently allege facts to establish the existence of a contact with the government.  And so, the Court **GRANTS** the government's motion to dismiss the amended complaint and **DISMISSES** the amended complaint.  RCFC 12(b)(1) and (6).

### A.    The Court May Not Consider Plaintiff's Tort And Antitrust Claims

As an initial matter, the Court must dismiss plaintiff's defamation and antitrust claims, because these claims are jurisdictionally precluded under the Tucker Act.  In the amended complaint, plaintiff alleges that the CDC defamed him by stating that plaintiff and Dr. Shearer "reported inconsistent results."  Am. Compl. at ¶¶ 6; 53-54.  Plaintiff's defamation claim plainly sounds in tort.  It is well-established that the Tucker Act explicitly places defamation claims beyond the jurisdiction of this Court.  28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . not sounding in tort."); *Hernandez v. United States*, 96 Fed. Cl. 195, 204 (2010) ("[T]he Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims.") (citation omitted).  And so, the Court must dismiss plaintiff's defamation claim for lack of subject-matter jurisdiction.  *Woods v. United States*, 122 F. App'x 989, 991 (Fed. Cir. 2004) ("The Court of Federal Claims is a court of limited jurisdiction, and claims sounding in tort, such as defamation, are outside the jurisdiction of the court.") (citation omitted).

To the extent that plaintiff seeks to assert a claim under the federal antitrust laws, the Court must also dismiss this claim.  Plaintiff alleges in the amended complaint that the CDC "engaged in an anti-competitive campaign to stifle the use and availability of his test."  Am. Compl. at ¶ 6.  But, any claim that plaintiff wishes to pursue under the federal antitrust laws must be brought in the United States District Courts.  *Kabando v. United States*, No. 14-562C, 2014 WL 4251548, at *2 (Fed. Cl. Aug. 28, 2014), *aff'd*, No. 15-5018 (Fed. Cir. Jan. 21, 2015) (explaining that district courts have original jurisdiction over "any civil action or proceeding

arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies" (quoting 28 U.S.C. § 1337(a)); *see Hufford v. United States*, 87 Fed. Cl. 696, 703 (2009); *Quality Furniture Rentals, Inc. v. United States*, 1 Cl. Ct. 136, 139 (1983). Given this, the Court must also dismiss plaintiff's antitrust claim for lack of subject-matter jurisdiction. RCFC 12(b)(1).

### B.      Plaintiff Fails To Establish The Existence Of A Contract With The CDC

The Court must also dismiss plaintiff's breach of contract claim in this matter, because plaintiff fails to sufficiently allege the existence of an implied-in-fact contract with the CDC in the amended complaint. It is well-established that plaintiff must first demonstrate the existence of a valid contract to prevail on a breach of contract claim against the government. *Aboo v. United States*, 86 Fed. Cl. 618, 626, *aff'd*, 347 F. App'x 581 (Fed. Cir. 2009) (quoting *Cooley v. United States*, 76 Fed. Cl. 549, 555-56 (2007)). And so, plaintiff must sufficiently allege facts in the amended complaint in this matter to show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (stating that these requirements are the same for both express and implied contracts). Plaintiff makes no such showing in this case for several reasons.

### 1.   The Amended Complaint Does Not Plausibly Allege An Offer To Contract

First, a careful reading of the amended complaint makes clear that plaintiff has not sufficiently alleged facts to show that the CDC unambiguously offered to enter into an implied-in-fact contract with plaintiff. In the amended complaint, plaintiff alleges that the CDC's chief of the diagnostic and reference laboratory, Dr. Schriefer, extended an offer to contract with plaintiff on behalf of the CDC when he publicly stated that:

> So wherever possible we encouraged and required other non-serologic-based tests in addition to clinical presentation so that might have included PCR or culture or both. . . [and that he was] looking forward to seeing a greater utilization of PCR as a diagnostic tool in the future.

Am. Compl. at ¶ 13. But, this Court has long held that mere solicitations, invitations, or instructions from the government are not offers to contract that can bind the government. *XP*

*Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 785 (2015) (citing *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 71-72 (1990)); *see also Bogley's Estate v. United States*, 514 F.2d 1027, 1032 (Ct. Cl. 1975) (explaining that an offer to contract with the government must amount to more than a mere expression of intent or general willingness to do something).

In this case, Dr. Schriefer's public statement to a conference audience suggests no more than a desire, or a general willingness, to see a greater utilization of PCR as a diagnostic tool for Lyme disease testing. *See Bogley's Estate*, 514 F.2d at 1032. Notably, this statement does not contain a promise from the CDC. *See id*. Nor does the statement request that plaintiff, or anyone else, develop a diagnostic test for Lyme disease. Given this, plaintiff cannot reasonably rely upon Dr. Schriefer's public statement to show that the CDC extended an offer to enter into the implied-in-fact contract alleged in this case.

Plaintiff's argument that Dr. Schriefer extended an offer to contract on behalf of the CDC when he stated in a telephone conference on October 25, 2013, that he "agreed that PCR is the ideal way to diagnose early infection" and that "DNA sequencing is the only reliable way to accurately, molecularly diagnose" is similarly misguided. Am. Compl. at ¶ 21. Accepting plaintiff's allegations regarding this telephone conference as true, the purported statements by Dr. Schriefer do not plausibly show that the CDC extended an offer to enter into an implied-in-fact contract. Rather, these factual allegations make clear that Dr. Schriefer expected that plaintiff would enter a written MTA with the CDC regarding the provision of Lyme disease testing samples—and it is undisputed that plaintiff ultimately executed two MTAs with the CDC. *Id*. at ¶¶ 21, 23.[3] And so, plaintiff simply has not alleged sufficient facts to show that the CDC unambiguously offered to enter into the implied-in-fact contract alleged in the amended complaint. *Kam-Almaz*, 682 F.3d at 1368.

## 2. The Amended Complaint Does Not Plausibly Allege Acceptance

Plaintiff similarly fails to sufficiently allege that he accepted any offer by the CDC to form the implied-in-fact contract alleged in this case. In the amended complaint, plaintiff alleges

---

[3] The CDC's understanding that plaintiff would execute a MTA with the CDC is reinforced by a November 1, 2013, email to plaintiff from the CDC's provider investigator for the MTAs, Dr. Claudia Molins, in which Dr. Molins states that she "will be in touch [with plaintiff] when the MTA is fully executed and will let [him] know when we ship the new panel [of testing samples] to [plaintiff]." Pl. Ex. 8 at 1; *see generally* Pl. Exs. 6, 9.

11

that he accepted the CDC's offer to enter into an implied-in-fact contract when Dr. Shearer contacted Dr. Schriefer to urge the CDC to endorse plaintiff's sequence-based molecular test. Am. Compl. at ¶ 15. But, as the government persuasively argues in its motion to dismiss, plaintiff has not alleged sufficient facts to show that Dr. Schriefer reasonably understood Dr. Shearer's statements to be an acceptance of an offer to contract. Def. Mot. at 7-8; *see also Am. Fed. Bank, FSB v. United States*, 62 Fed. Cl. 185, 198 (2004).

In this regard, this Court has recognized that the conduct of an offeree can constitute acceptance of an offer to contract. *Am. Fed. Bank, FSB*, 62 Fed. Cl. at 198. But, the offeror must reasonably understand this conduct to be an acceptance of the offer to contract in order to form the contract. *Id*. In this case, plaintiff does not explain how Dr. Shearer's urging of the CDC to endorse his testing methodology made clear to Dr. Schriefer that plaintiff was accepting an offer to contract. Am. Compl. at ¶ 15. Rather, the facts alleged in the amended complaint show that Dr. Schriefer expected that plaintiff would execute a written MTA with the CDC and that this agreement would govern plaintiff's relationship with that agency. *Id*. at ¶¶ 21, 23.

Indeed, plaintiff acknowledges in the amended complaint that Dr. Schriefer "agreed that the CDC would provide certain testing samples" to plaintiff and that, if favorable, additional testing samples would be shared with plaintiff. *Id*. at ¶ 16. There is no dispute that the agreement to provide these testing samples is memorialized in the MTAs that plaintiff eventually executed with the CDC. *Id*. at ¶ 24; Pl. Exs. 6, 9. Given this, the factual allegations in the amended complaint do not show—and in fact refute—that plaintiff's various interactions with the CDC created a separate implied-in-fact contract with the CDC.

### 3. The Amended Complaint Does Not Plausibly Allege Authority To Contract

Plaintiff also fails to sufficiently allege that a CDC employee or agent had the requisite authority to enter into the alleged implied-in-fact contract with plaintiff. *See Doe v. United States*, 95 Fed. Cl. 546, 583 (2010) (stating that plaintiff must plead facts sufficient to allege that the government agent had actual authority to bind the United States to a contract); *see also Kam-Almaz*, 682 F.3d at 1368. Plaintiff alleges in the amended complaint that it was "reasonable for [him] to believe" that Drs. Schriefer and Molins had the authority to bind the CDC in contract, because these individuals were "the only CDC employees with materials and ability to evaluate tests for Lyme disease." Am. Compl. at ¶ 29-30; *see also id*. at ¶ 35 ("Dr. Bell, Dr. Schriefer,

Dr. Molins, Dr. Blake-DiSpigna, Ms. McDaniels, Ms. Ross and Ms. Bogaard . . . were in fact authorized, or represented through their communications and actions that they were authorized, to contract on behalf of the CDC."). But, plaintiff has put forward no factual allegations, or evidence, to show that Drs. Schriefer and Molins had the authority to enter into the implied-in-fact contract alleged in this case. *Doe*, 95 Fed. Cl. at 583 ("[T]he court cannot glean from plaintiff's amended complaint . . . evidence sufficient to imply actual authority.").

Plaintiff's assertion that the CDC's Director of the National Center for Emerging and Zoonotic Infectious Diseases, Dr. Beth Bell, M.D., M.P.H., had the authority to bind the CDC in the alleged implied-in-fact contract is similarly unfounded. Am. Compl. at ¶ 32. Plaintiff alleges that Dr. Bell could bind the CDC in contract because she is the Authorized Official for Provider for the CDC under the MTAs. *Id.* But, Dr. Bell's authority to approve the MTAs on behalf of the CDC has no bearing on any authority that she might have had to bind the CDC in the contract alleged in the amended complaint.

In addition, plaintiff's allegation that other named CDC employees, who were "involved in discussing and preparing the MTAs" were authorized to contract on behalf of the CDC must also fail. *Id.* at ¶¶ 31, 35. The amended complaint is devoid of any factual allegations to show that these employees had the authority to contractually bind the CDC. *See generally id.*; *see also Doe*, 95 Fed. Cl. at 583-84. Given this, plaintiff has not met his burden to show that an authorized representative of the CDC bound that agency in an implied-in-fact contract.

In sum, plaintiff has not sufficiently alleged facts in the amended complaint to show that there has been an unambiguous offer and acceptance of a contract between plaintiff and the CDC, whereby the CDC "promised that if the tests performed as expected, [plaintiff's] testing would be approved [by the CDC] as the 'gold standard.'" Am. Compl. at ¶ 35; *see id.* at ¶¶ 32-34. Nor has plaintiff sufficiently alleged that an authorized representative bound the CDC in such a contract. Because plaintiff fails to sufficiently allege facts to show the formation of a contract with the CDC, the Court must dismiss plaintiff's breach of contract claim for failure to state a claim upon which relief can be granted. RCFC 12(b)(6).[4]

---

[4] Because the Court concludes that it may not consider plaintiff's tort and antitrust claims—and that plaintiff has not put forward sufficient allegations to establish the existence of a contract with the government—the Court does not reach the other issues raised in the government's motion to dismiss.

C.      **Further Amendment Of The Complaint Would Be Futile**

As a final matter, plaintiff requests leave to amend the complaint—for a second time—if the Court concludes that the amended complaint does not sufficiently allege a breach of contract claim.  Pl. Resp. at 31.  Generally, this Court freely grants leave to amend a complaint.  RCFC 15(a)(2).  But, in this case, the Court previously granted plaintiff leave to amend the complaint to address jurisdictional and other deficiencies on September 25, 2018.  *See generally* Scheduling Order, dated Sept. 25, 2018.  As discussed above, plaintiff has not cured these deficiencies with his amended complaint.  Given this, further amendment of the complaint would, in the Court's view, be futile.  And so, the Court **DENIES** plaintiff's request for leave to amend the complaint.  *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 717 (2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment" as sufficient reasons to deny leave to amend).

## V.      **CONCLUSION**

In sum, when read in the light most favorable to plaintiff, the amended complaint makes clear that plaintiff has not established that the Court possesses subject-matter jurisdiction to consider his defamation and antitrust claims.  A careful reading of the amended complaint also makes clear that plaintiff fails to sufficiently allege facts to show the formation of an implied-in-fact contract with the CDC to pursue a breach of contract claim.  And so, for the foregoing reasons, the Court:

1.  **GRANTS** the government's motion to dismiss the amended complaint; and

2.  **DISMISSES** the amended complaint.

The Clerk's Office is directed to **ENTER** final judgment in favor of the government, **DISMISSING** the amended complaint.

No Costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge